**Robert BARBOUR, Plaintiff-Appellee,**

v.

**SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, a voluntary unincorporated association, Defendant-Appellant.**

**No. 17910.**

United States Court of Appeals
Sixth Circuit.

Sept. 27, 1968.

Sheldon L. Klimist, Detroit, Mich., for appellant, Zwerdling, Miller, Klimist & Maurer, Detroit, Mich., Mulholland, Hickey & Lyman, Toledo, Ohio, on the brief.

Richard M. Goodman, Detroit, Mich., for appellee, Goodman, Eden, Robb, Millender, Goodman & Bedrosian, Detroit, Mich., on the brief.

Before O'SULLIVAN, CELEBREZZE and COMBS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Sheet Metal Workers International Association appeals from a judgment of the District Court of the United States for the Eastern District of Michigan, Southern Division, which ordered reinstatement of plaintiff-appellee, Robert Barbour, to membership in the appellant union, from which he had been expelled.

His expulsion followed affirmance by the union's General Executive Council of the action of an International Trial Board before whom charges against appellee Barbour were heard. This Board had found Barbour guilty of four of the five charges made and directed his expulsion. One of the charges, referred to herein as Charge No. 5, was that Barbour had, contrary to Article 17, Sec. 1(c) of the Union Constitution, sent a letter to all the members of the Sheet Metal Workers libelously charging high officers of the International with grossly corrupt and dishonest conduct. Reinstatement was ordered by the District Judge upon his view that Barbour's ex-

pulsion was, at least in part, motivated by his having written the letter charging corrupt conduct by the International's officers; that the sending of such letter was a protected exercise of free speech as provided by the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a) (2); and that Barbour should, therefore, be reinstated notwithstanding his guilt and conviction of other conduct sufficient, by itself, to permit and warrant expulsion. We reverse.

Barbour had in 1962 been elected President of Local 292, Sheet Metal Workers International, and a period of turmoil within the local followed. The formal charges served on March 29, 1963, may be summarized as follows:

1) That Barbour, without proper procedure, had gotten himself elected to a fulltime, salaried position with the local, and thereafter refused to comply with an order of the International's president that he discontinue drawing such salary until properly voted to him by the local.

2) That he refused to entertain a motion during a local meeting which called for rescission of the full time salaried position which he had assumed.

3) That he instigated action whereby the incumbent business manager and financial secretary-treasurer of the local was removed from office and thereafter directed the illegal choice of another to take over said office.

4) That after limited trusteeship of the local was ordered by the International, and later when total trusteeship was ordered, he refused to allow the trusteeship to operate and refused to turn over to the trustee the local's books, records and money, or to surrender the local's premises, and carried on a sit-in at the local's office.

5) That on February 4, 1963, he circulated to members of the local and to various other locals of the Sheet Metal Workers a letter charging officers of the International with corrupt and dishonest conduct.

Pursuant to procedures prescribed by the union's Constitution, an International Trial Board was convened to hear these charges. This Board found Barbour guilty on all of the charges except No. 2, which was apparently dropped. Its decision, dated September 23, 1963, reviewed the evidence and concluded:[1]

*"In assessing the penalty to be imposed in this case,* the Board is not unmindful of Brother Barbour's plea that he was motivated solely by his interest in local Union 292 and its members. Be that as it may, this International Union can operate effectively and democratically only by enforcing compliance with the orderly procedures of the Constitution which its members have adopted. There is no doubt that the record in this case demonstrates that conditions in Local 292 left much to be desired. The *clear implication is* that the trusteeship was imposed by the General President to correct these conditions. It was the conduct of Brother Barbour and some of his followers which effectively delayed this effort until their conduct was terminated by court order. It is the feeling of the Board that conviction on any one of these charges would justify expulsion from membership and it is the decision of this Board that Brother Robert E. Barbour be expelled from membership in Local Union 292 and the Sheet Metal Workers' International Association as of this date." (Emphasis supplied.)

Neither the sufficiency of the evidence supporting the Board's findings nor the propriety or fairness of the hearing out of which they came is questioned here. As provided in Article Seventeen, Sec. 1(a) of the International's Constitution, expulsion is a permissible penalty for the commission of any of the offenses upon which Barbour was tried.

---

1. It will be noted that in "assessing the penalty" the Board makes no reference to Barbor's libelous letter.

In due season and conforming to established procedure, Barbour's appeal to the General Executive Council of the International was heard and disposed of. By Section 7 of Article Nineteen of the Constitution it is provided:

"The * * * General Executive Council * * * shall have the right to affirm, amend, modify, or reverse any decision which has been submitted to them on appeal, *and fix the penalty if any, in connection therewith.*" (Emphasis supplied.)

At, or prior to, the hearing of Barbour's appeal, the General Executive Council was advised by the International's general counsel that Barbour's letter allegedly libeling the International Officers of the union might be looked upon as permissible under the free speech section of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a) (2). Accordingly, when its decision on Barbour's appeal was announced it contained the following:

"The record clearly supports the findings and decision of the trial board. The General Executive Council recognizes that there may be some legal impediment to the imposition of a penalty upon a member for the violation of Section 1(c) of Article Seventeen (17) of the Constitution which was involved in charge No. 5.

"It should be noted, however, that the decision of the trial board found that conviction on any one of the charges which were preferred against the appellant would justify expulsion from membership. We agree with that conclusion and our decision on this appeal would be to affirm the expulsion with or without a finding of guilty on charge No. 5.

"The appeal is denied and the penalty imposed by the trial board is affirmed."

Between the announcement of the International Trial Board decision on September 23, 1963, and the hearing and final disposition of Barbour's appeal to the General Executive Council, whose decision was announced June 26, 1964, the complaint in the case before us was filed in the District Court on March 27, 1964. The gravamen of the complaint relevant to the issue before us was that the expulsion penalty was in part the result of Barbour's guilt of charge No. 5—the libel letter; that the writing of such letter was a protected exercise of Barbour's right to free speech guaranteed by 29 U.S.C. § 411(a) (1) and (2); and that therefore he was illegally expelled from the union. After trial had in the spring of 1966, the District Judge, following an amended opinion filed on January 11, 1967, entered an amended judgment on February 17, 1967, whereby it was ordered, *inter alia:*

"2. That plaintiff be forthwith reinstated with full privileges as a member of Local 292 and the International Union, Sheet Metal Workers International Association.

"3. That all reference to Plaintiff's expulsion from Local 292 and the International Association be expunged from the records of said Local Union and International Association.

"4. That all members, officers and agents of Local 292 and the International Association be and they are hereby restrained and enjoined from interfering with Plaintiff's right to free speech in connection with those matters which were the subject of this law suit.

"5. That any charges which may hereafter be filed against Plaintiff for any alleged violations of the International Constitution shall be only in accordance with its applicable provisions and shall not be in violation of Plaintiff's rights as stated in the Opinion of this Court."

From this judgment, the instant appeal was taken. We reverse.

While it was not the function of the District Judge, nor is it ours on this appeal, to weigh the gravity of Barbour's conduct, as background, we set out the high points. Appellee Barbour was elected president of Local 292 in August,

1962. Elected at the same time was a Business Agent and Financial Secretary-Treasurer, one Walters. The following general summary of Barbour's misconduct, taken from the findings of the International Trial Board, is a helpful recital of the facts:[2]

"The record in this case establishes that all has not been well in Local Union No. 292 for some time. It is clear that the normal and proper functioning of the local union was being seriously impaired. This state of affairs may have been brought about by a personal feud between Brother Barbour, who was its president, and Brother Edwin Walters, its Business Representative and Financial Secretary-Treasurer, or it may have been attributable to other causes. In any event, as a consequence of intra-Union conflict, certain members, including Brother Barbour, had staged a "sit-in" in the Local Union Office in a dispute over the custody and availability of books and records of the local union. The local union's safe had been drilled open and its files opened by a locksmith. As a result of these conditions and the refusal of Brother Barbour to comply with instructions of the General President that he submit the question of his full time salary to the membership after proper notice, President Carlough, on December 27, 1962, placed the Local Union No. 292 in limited trusteeship and appointed Brother George Dowler as trustee. The apparent failure of the limited trusteeship to solve the problem caused the General President, on January 4, 1963, to place Local Union No. 292 under complete supervision. It is charged that Brother Barbour and certain other members refused to recognize the trusteeship and engaged in conduct which gave rise to the issues before us.

"The facts out of which the charges against Brother Barbour arose are largely undisputed. Except in minor detail, Brother Barbour, in effect, admitted the acts with which he was charged. His defense is predicated on the grounds that his actions did not constitute a violation of the International Constitution; that in any event they were justified by existing conditions in the local union and that the existence of a pending court case excused his defiance of the trusteeship."

Barbour admitted that he inspired the "sit-in," that he procured the drilling of the safe and the breaking into the file drawers, and that he refused to comply with directions given by the International President. When a trusteeship for Local 292 was ordered by the International, Barbour refused to recognize its validity. Ultimately the propriety and validity of the trusteeship was sustained by order of the United States District Court at Detroit, entered on April 22, 1963, enjoining Barbour from interfering with the trustee's management of the Local's affairs. No appeal appears to have been taken from this order.

No contention was made in the District Court, nor is one made here, that the broad distribution of Barbour's letter was not protected by the so-called "free speech" statute,[3] even though made

---

2. Here again it will be seen that no emphasis is placed upon, nor is any mention made of, the libelous letter written by Barbour. The letter is mentioned only in the separate consideration of it.

3. § 411. Bill of rights; constitution and bylaws of labor organizations.
  (a) (2) *Freedom of speech and assembly.* Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the re-*

an offense under the following provision of the union's Constitution:

"Slandering any officer or member of this Association or of any local union or council thereof, verbally or by letter or in printed form, giving public utterance or publicity to any charge, statement or attack on the actions, policies character, or conduct of any officer or member of this Association or of any local union or council thereof, except in the form of charges properly filed against such officer or member as provided in this Constitution." (Sec. 1(c), Article Seventeen).

Notwithstanding the limitation upon the exercise of *free speech* contained in the proviso of the statute, as set out in footnote 3, and that nowhere in the Act are libel and slander spelled out as protected activities, it has been held that libel against a union officer is a permissible and unpunishable exercise of the right of free speech. Salzhandler v. Caputo, 316 F.2d 445, 446 (2nd Cir. 1963). We, however, need not pass upon the question here. Appellee does not deny that the other offenses admittedly committed by him violated the appellant-union's Constitution, nor that each was by itself ground for expulsion.

We read the District Court opinion to be that even though the International Trial Board found Barbour guilty on charges one, three, four and five, saying "that conviction on any one of these charges would justify expulsion," and even though the General Executive Council affirmed the trial board's findings and order of expulsion "without consideration of charge 5" (District Court opinion), nevertheless Barbour's expulsion must have been in part the product of his libel of the International union officers and, therefore, his expulsion violated his protected right of free speech.

The District Judge, expressing his view that this is a case of first impression, observed:

"The evidence presented justified the conclusion that the trial board considered all the charges together and imposed the penalty of expulsion upon the findings of guilty as to four of them. Defendant's assertion that inasmuch as the possible penalty for each finding of guilt was expulsion, the Court must conclude that such was the judgment and decision of the trial board is contrary to reason and common sense and can only be characterized as belated rationalization. There is no evidence that the board considered a specific penalty on each conviction."

The evidence which led to this conclusion apparently included the testimony of two of the three members of the International Trial Board, which ordered the expulsion of Barbour. These men were called for cross-examination by Barbour's counsel; they had been earlier deposed by him. The effort of these cross-examinations was to have them admit that the finding of Barbour's guilt on charge 5 (free speech) in some measure led to the decision to impose the penalty of expulsion. We are satisfied, however, that a fair reading of the testimony of the two Trial Board members does not support the inference that Barbour's libeling of the International officers was of importance in his expulsion. Also, we read the Trial Board's order and that of the General Executive Council as explicitly negating a contrary inference. In the Board's order it was recited:

"It is the feeling of the Board that conviction on any one of these charges would justify expulsion from membership and it is the decision of this Board that Brother Robert E. Barbour be expelled from membership in

*sponsibility of every member toward the organization as an institution and to his refraining from conduct that would in-* *terfere with its performance of its legal or contractual obligations.* (Emphasis supplied.)

Local Union 292 and the Sheet Metal Worker's International Association as of this date."

And the General Executive Council's affirmance made clear that expulsion was the proper penalty, excluding from consideration charge No. 5, saying that "the penalty imposed by the trial board is affirmed." The International Union's Constitution empowers the General Executive Council not only to affirm or reverse any decision of a Trial Board but, as a separate and distinct authority, to fix the penalty to be imposed. Article nineteen of the Constitution provides:

"Sec. 7. The General President, General Executive Council and General Convention shall have the right to affirm, amend, modify, or reverse any decision which has been submitted to them on appeal, *and fix the penalty*, if any, in connection therewith." (Emphasis supplied.)

The District Judge's opinion states his own conclusion that the General Executive Council affirmed the expulsion "without consideration of charge 5." We doubt the propriety of impeaching the Trial Board's order by later inquiry into the mental processes of two of its members, as was attempted by counsel for appellee.

■■ If the District Court's critical determination can be viewed as a finding of fact, we consider that it was clearly erroneous. F.R.Civ.P. 52(a). Cf. Vars v. International Brotherhood of Boilermakers, 215 F.Supp. 943, 949 (D.Conn.1963), affirmed, 320 F.2d 576 (2d Cir. 1963). Furthermore, we think that any infirmity that may be thought to inhere in the Trial Board's ruling was effectively cured by the International Executive Council's review of the Board's proceedings. As noted above, the Council had power to independently "fix the penalty" in connection with their review, which they did by affirming the Trial Board's imposition of expulsion, while explicitly excluding charge 5 from consideration.

We emphasize that where, in its findings, the Trial Board considers the penalty to be imposed, its recitals (footnote 1 above) do not mention the libelous letter. The emphasis was on Barbour's interference with the operation of the local and the trusteeship imposed by the parent International. Such is the situation also in the Board's general review of the evidence, as set out in footnote 2 above.

The judgment of the District Court is reversed with direction to enter judgment for defendant, dismissing this complaint.