John H. WAMBLES, Plaintiff-Appellant,

v.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CHAUFFEURS, etc.,
et al., Defendants-Appellees.

Doris I. RACHEL, Plaintiff-Appellant,

v.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CHAUFFEURS, etc.,
et al., Defendants-Appellees.

Jimmy R. MOSLEY, Plaintiff-Appellant,

v.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CHAUFFEURS, etc.,
et al., Defendants-Appellees.

No. 73-2018.

United States Court of Appeals,
Fifth Circuit.

Jan. 25, 1974.

Robert G. Kendall, Edward B. Mc-Dermott, Mobile, Ala., for plaintiffs-appellants.

Otto E. Simon, Mobile, Ala., L. N. D. Wells, Jr., Dallas, Tex., for defendants-appellees.

Before COLEMAN, AINSWORTH and GEE, Circuit Judges.

PER CURIAM:

In these consolidated suits of several plaintiffs filed under the Labor-Management Reporting and Disclosure Act (sections 101(a)(1) and (2)), the material facts do not appear to be disputed, and the district judge held as a matter of law that summary judgment in favor of defendants was appropriate. We affirm these findings and conclusions on the basis of the well-reasoned opinion of Judge Pittman, which is appended hereto.

Affirmed.

ORDER

These actions were instituted pursuant to the Labor-Management Reporting and Disclosure Act, Title 29, Sec. 412, United States Code. Plaintiffs, former officers and employees of defendant Local 991, charge that defendant Morton R. Sherman, as agent for the Interna-

tional Brotherhood and Local 991, wilfully, deliberately and maliciously discharged them from their positions with the Local in violation of Subchapter II (Bill of Rights of Members of Labor Organizations) of the Labor-Management Reporting and Disclosure Act, Title 29, Sec. 411, United States Code.

Most of the essential facts giving rise to this dispute are agreed upon by the parties. In December, 1971, plaintiff Mosley and defendant Sherman were opposing candidates for the office of business manager of Local 991. Up to and including this time, Mosley and plaintiff Wambles occupied the positions of assistant business managers of the Local and plaintiff Rachel was bookkeeper. All were and had been members in good standing of the International Brotherhood and Local 991. It is alleged that Wambles and Rachel supported the candidacy of Mosley in the election. Sherman won the election and became the business manager of Local 991 at which time he discharged the plaintiffs from their respective positions.

The offices of the plaintiffs are not for a specified term. The Constitution of the Local and International each provides that they will serve, in effect, at the pleasure of the president.

"[The Secretary-Treasurer Business Manager] shall have the authority to hire and discharge all employees." Constitution and By-Laws and Rules of Order for Teamsters, Chauffers, Warehousemen and Helpers Local Union 991, Article VIII, Sec. 3, p. 26. "Appointed Business Agents or appointed Assistant Business Agents may be removed at will by the appointing authority." Constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Article XXII, Sec. 8, p. 142.

There are two competing theories about whether a Union employee can be dismissed from office for his political activities. One is presented by Sheridan v. United Brotherhood of Carpenters, 306 F.2d 152 (3rd Cir. 1962), which states that dismissal is proper. The other is presented by Grand Lodge of Internat'l. Ass'n. of Machinists v. King, 335 F.2d 340 (9th Cir. 1964), which holds that dismissal for political activity is not allowed.

The Fifth Circuit has not had a case before it calling for a clear ruling on which theory it deems correct. The development of the law [1] has been noted.

As a practical matter, the Union president should be able to work with those who will cooperate with his program and carry out his directives. It can be argued that an appointed office holder under the president who has opposed him in the election does not guarantee obstructionist policies while he serves in his position as an appointed Union official and that before the appointed official could be discharged for cause he would have to show an actual conflict of interest. This is a rather charitable view of persons recently involved in political conflict. A more realistic view would be that in a great majority of cases the friction generated in the election campaign would infect and seriously impede the successful candidate's implementation of his program approved by the membership electing him.

■■ To extend the protection of labor's "Bill of Rights", Section 101(a)(1) (29 U.S.C. Sec. 411(a)(1) and "Free Speech Rights", Section 101(a)(2), U.S. C. Sec. 411(a)(2) to such office holders would, in effect, give such officer a lifetime job except on dismissal for cause. The elected officials necessarily rely on appointed officials to implement policies and plans presumably approved by the Union membership in the election. To tie the President's hands, an elected official, by not allowing him to discharge without cause or for any reason those

1. Airline Maintenance Lodge 702,, IAM & AW v. Loudermilk, 444 F.2d 719 (5th Cir. 1971); Sewell v. Grand Lodge of IAM & AW, 445 F.2d 545 (5th Cir. 1971); and Fulton Lodge #2 of IAM & AW v. Nix, 415 F.2d 212 at 217 (5th Cir. 1969).

who must serve under him, would so restrict the elected officers in the discharge of their duties that elections could be meaningless. An appointed official should carry out the approved policies of the Union. His convictions and loyalties should be to the Union and not a personal fiefdom beyond the reach of the membership, here expressed by the appointive powers of its elected officers.

The dismissed officials worked against the election of the President, one of them ran against him, which means the President was opposed on personal grounds or policy grounds, but in either event, would create an intolerable situation for the elected official in implementing his programs on which he was elected.

To force the President to cast around for grounds to discharge appointed officials "for cause" would force the courts into a thicket of subtleties and hypocrisies of charges in an effort to ascertain whether or not the charges were bona fide or merely a cloak for dismissial for other reasons. In fact, it might well serve appointed officials, such as the plaintiff, to oppose any candidate for President that he might think would appoint someone in his place, therefore clouding the issue of "for cause" with a claim he was exercising his right of free speech.

■ Appointed officials certainly have the right to run for office, support or oppose any one of their choosing, promote or oppose any policy or program and not be discharged from membership in the Union or disciplined as a member, but it appears to me to go beyond the intent of the Act to freeze them in a job in which they serve not for a term, but at the pleasure of an elected official with appointive powers set out in the Unions' Constitutions.

The elected official has the right to the personal loyalty and loyalty to his programs from those working under him.

If the Act intended to create a classified or civil service type structure, it could have easily so stated in explicit terms. It should not be read into the Act by the courts.

It is but a small step from a free speech right under this Act and dismissal only for cause to judicial construction by case law that the President of the United States cannot appoint his policy makers, not covered by classified service or term of office, except for cause on the ground that it would have a chilling effect on the First Amendment.

Therefore it is ordered, adjudged and decreed that the defendants' motion for summary judgment in each case be, and is hereby, granted.

Costs are taxed against the plaintiffs.

Done, this the 23 day of March, 1973.

    /s/ Virgil Pittman
       United States District Judge