Emil CEHAICH, Plaintiff,

v.

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, a labor organization, Douglas Fraser, Irving Bluestone, John Bolin, and Robert Walker, individuals, jointly and severally, Defendants.

Civ. A. No. 80–71091.

United States District Court, E. D. Michigan, S. D.

Sept. 15, 1980.

Barbara Shaw Harvey, American Civil Liberties Union Fund of Michigan, Wayne State University Law School, Detroit, Mich., for plaintiff.

Claude D. Montgomery, Asst. Gen. Counsel, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

Plaintiff's action against his union and several of its officers claims violation of his rights under certain provisions of the Labor–Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 401, *et seq.*), and the Labor Management Relations Act (29 U.S.C. § 141 *et seq.*).

The facts of the case are not in dispute. Plaintiff is a machine repair worker in the General Motors Design Staff Unit. For 15 years he has been, and he remains, a member in good standing of the UAW, now in Local Union 160. From 1975 until 1979, plaintiff served as an un–paid "benefit representative" of the union, a position which had been created by the collective bargaining agreement between GM and the UAW. Plaintiff's duties during working hours included consulting with and advising fellow workers and their dependents as to their entitlement to benefits pursuant to pension plans, insurance plans and supplemental unemployment benefits programs, as applicable.

Plaintiff's role as a benefit representative, (a position to which he had been appointed by the International Union's administrator of the Benefits Plans Section; defendant Robert Walker) came to an end when he was removed from his position by a letter dated October 15, 1979. This letter of notification was sent by defendant Walker to the appropriate General Motors corporate personnel, and plaintiff has not served as a benefit representative since.

The removal from office followed by three weeks plaintiff's attendance at an orientation meeting in Dallas, Texas, which had been convened by the union as an informational session for lower level union officials, including a number of health and safety representatives, committeemen, and benefit representatives of other GM installations. The purpose was to inform those in attendance of the terms of the recently negotiated GM–UAW collective bargaining agreement. At that meeting, on September 22, 1979, plaintiff participated in distribution of a leaflet asserting that the new agreement (which had been accepted by the union's "GM Council" but had not yet been ratified by the local membership, or the International Executive Board) was a "sell–out", and that it provided insufficient benefits and inadequate working conditions for GM employees. The leaflet included a cartoon harshly critical of UAW leadership, contained five specific disagreements with terms of the proposed contract, and urged those attending the Dallas meeting to attend certain other scheduled meetings of an independent caucus of UAW skilled trades workers. Following his removal from office, plaintiff was orally informed by defendant Walker that his removal was due to the "slanderous" remarks contained in the leaflet.

Defendants seek dismissal of three of the four counts of plaintiff's complaint. Two counts concern the alleged violation of plaintiff's free–speech rights, and his entitlement to due process under the LMRDA, and the third alleges that defendants have violated the terms of the Union Constitution, thereby breaching a contract within the meaning of 29 U.S.C. § 185 (hereafter referred to as § 301 of the LMRA). Oral arguments on this motion were heard on July 14, 1980. The motion to dismiss these counts will be granted, for the reasons set forth below.

## COUNT I–FAILURE TO STATE A CLAIM UNDER § 101(a)(2) OR § 609

The LMRDA, enacted by the Congress in 1959, was intended to remedy the problem of anti–democratic trends which were then developing within certain labor unions. Congress had noted a disturbing growth of evidence that some unions habitually acted

in "disregard of the rights of individual employees". Congress concluded that this tendency required corrective legislation to "afford necessary protection of the rights and interests of employees and the public generally as they relate to the activities of labor organizations, employers, labor relations consultants, and their officers and representatives." [§ 2(b) of the LMRDA, 29 U.S.C. § 401(b)].

An important aspect of this protection is afforded by Title I of the LMRDA, known as the "Bill of Rights" of union members. Section 101(a)(2) within this Title is the basis of plaintiff's first count. It states:

FREEDOM OF SPEECH AND ASSEMBLY.—Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

Section 609 of the LMRDA (29 U.S.C. § 529) declares that:

It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this Act. The provisions of section 102 shall be applicable in the enforcement of this section.

Section 102 of the LMRDA (29 U.S.C. § 412) is the provision which specifically establishes jurisdiction in the District Courts of claims for violations of Title I.

■ The question before this court is a narrow one, though not one of small importance; whether it is lawful for a union to remove appointed officers from their positions because of their exercise of Title I free speech rights. The court concludes that such a removal is lawful, and that Count I of plaintiff's complaint must therefore be·dismissed.

The circuit courts have taken varied approaches to the issue of union officers' dismissals and consequent alleged violations of the LMRDA. The Sixth Circuit Court of Appeals has not addressed this problem. *Barbour v. Sheet Metal Workers International Association,* 401 F.2d 152 (6th Cir. 1968), held that the expulsion of an elected union officer from his position *and* from union membership was lawful, but the court concluded that it need not pass on the question of the union officer's free speech rights in relation to his expulsion, as there were other independent charges supporting the expulsion as well. Some of the circuits have distinguished between the rights accruing to appointed union officials as opposed to those who have been elected. Of these decisions, some hold that elected officers have rights cognizable under LMRDA, while others hold to the contrary. Some circuits have focused upon the nature of the "speech" of the union official, and others upon the effect of a dismissal on other union members. Not all of the precedent in this area involves the fact situation found here—an appointed officer, summarily removed from his position by his appointing superior, claiming a violation of his Section 101(a)(2) rights, as protected by Section 609. This court has adopted the applicable reasoning of one line of these decisions and addresses here only the narrow issue described above.

■ It appears to this court that the sounder reasoning, in light of the policy and purpose of the LMRDA, is that *appointed* officers, who hold their positions solely by virtue of the patronage of those who have been elected by the membership, may be removed without cause at the discretion of

their appointing superiors. Thus, plaintiff's removal, which was unquestionably directly related to his dissidence, was not in violation of the LMRDA. This reasoning is derived from an analysis of the Act, and of the circuit decisions in this area.

The Third Circuit, beginning with *Sheridan v. United Brotherhood of Carpenters Local 626*, 306 F.2d 152 (3d Cir. 1962) has consistently held that this type of removal is not actionable under § 101(a)(2) or § 609, although there is no single decision which parallels the instant fact situation. (Although Judge Kalodner wrote by himself in *Sheridan*, there being no majority decision, the Third Circuit has subsequently reaffirmed his holding.) In *Sheridan* the court looked only at Section 609 and held that an *elected* business agent could be removed from office by a vote of the membership (which was angered at the agent's initiation of criminal charges against a fellow union member), without constituting "discipline" within the meaning of that section. Obviously, the decision is distinguishable from the case at bar, but it is the starting point of further opinions in the Third, as well as the Fifth Circuit. In affirming the trial court's decision, the Third Circuit stated:

> Thus, neither under the "Bill of Rights" provisions of Title I, nor under Section 609, proscribing disciplinary sanctions against union members, is plaintiff's status as business agent protected by the Act. It is the union–member relationship, not the union–officer or union–employer relationship, that is protected.
>
> * * * * * *
>
> [I]f we accepted plaintiff's contention we would be holding that the Act made it unlawful for Union [sic] to rid itself of the "untenable situation" and "internal bickerings" that would result "if the union membership were subjected to . . . [plaintiff's] decision in matters of importance when it did not want him."

This emphasis upon the union membership's's right to be rid of union officers with whom it is displeased (whether the reasons for such displeasure be political, personal or otherwise) is appropriate to the instant case as well. Plaintiff was removed summarily by defendant Walker, who worked directly under the appointment of then–Vice President of the UAW, Irving Bluestone. Mr. Bluestone was an elected officer of the union, undisputedly authorized to act by the democratic procedures of a membership which approved of his policies and programs. An appointed union officer, selected by and subject to dismissal by an elected one, may be presumed to contravene the will of the membership when he contravenes the policies of its elected officers. This court is aware that sizeable minorities may disagree with those policies but the remedy for this disagreement is available through the union's own political and electoral processes. Furthermore, the policies of the Act in favor of union democracy are actually *advanced* by permitting elected officers to freely select and remove their appointees, since such selection and removal is the only available means for implementation of the majority will and policy.

After *Sheridan*, Judge Kalodner's opinion, and specifically his conclusion that Section 609 was not meant to afford a remedy to union officers, was cited with approval by a unanimous court in *Martire v. Laborers' Local Union 1058*, 410 F.2d 32 (3d Cir. 1969). That same portion of *Sheridan* was approved by the majority of another Third Circuit panel (including the judge who has previously dissented in *Sheridan*), where the court again affirmed that the Act protects the union–member relationship, but affords no relief to a suspended union officer. In this regard, it must be noted that *plaintiff herein has never been disciplined in a manner impacting upon his membership status*; plaintiff was not expelled or suspended from his union, directed to pay any fine, or restricted in his right to participate fully as a member, in any union activity.

The Fifth Circuit has decided, in a line of cases factually similar to the instant case, that the dismissal of an appointed union officer is not actionable under the LMRDA. Beginning with *Sewell v. Grand Lodge of*

the International Association of Machinists and Aerospace Workers, 445 F.2d 545 (5th Cir. 1971), the court held that a union appointee may be relieved of his position because he has spoken against union policies. No violation of § 609 or § 101(a)(2) of the LMRDA was found. The Sewell case noted that:

> To hold that a union has no right to discharge an employee for insubordination under the facts of this case would, we believe, seriously detract from effective cohesive union leadership. The result might well be weak, ineffective and fragmented unions which would be paralyzed in bargaining for the rights and welfare of union members against the monolithic front of large commercial corporations in the modern commercial world.

The Sewell decision described the union officer's actions as "insubordination." Plaintiff here would have this court distinguish his dissidence from what he characterizes as more serious acts of disloyalty. However, the acts which constituted insubordination in Sewell are not significantly different from those which are undisputed here. The union officer in Sewell openly and vigorously advocated that the membership reject a referendum proposition which was supported by the union's executive council. Here, of course, plaintiff also openly criticized the union-negotiated agreement and urged its opposition, among other union officials. Such advocacy was undeniably his right, but it is equally undeniable that this appeal was no less divisive than that in Sewell. Furthermore, this court explicitly declines plaintiff's invitation to embroil itself in controversies over the differences between dissidence and insubordination, in this context. National labor policy, as expressed in the LMRDA and in case decisions under the Act, instructs the federal courts to refrain from just such intrusive involvement in intra-union affairs. This general policy is most compelling in the area of the free speech rights of patronage employees, or appointees, of the union. This court believes that the discharge of an appointed union officer is not

actionable under the LMRDA, and that there is no need for a determination of just or unjust cause for that termination.

Following Sewell, the Fifth Circuit adopted the position here followed, in Wambles v. International Brotherhood of Teamsters, 488 F.2d 888 (5th Cir. 1974). Noting the split between the Third and Ninth Circuits (discussed infra), the court held that appointed union officers were subject to discharge, without cause, for their opposition to the newly elected business manager in his just-completed election campaign. The court, in upholding the dismissal of the assistant business manager of the local, by its elected president, held:

> To extend the protection of labor's "Bill of Rights", Section 101(a)(1) . . . and "Free Speech Rights", Section 101(a)(2) . . . to such office holders would, in effect, give such officer a lifetime job except on dismissal for cause. The elected officials necessarily rely on appointed officials to implement policies and plans, presumably approved by the Union membership in the election. To tie the President's hands, an elected official, by not allowing him to discharge without cause or for any reason those who must serve under him, would so restrict the elected officers in the discharge of their duties that elections could be meaningless. Wambles v. IBT, at 889–890.

The court held that so long as union officials were not discharged from membership in the union, or disciplined as members, then no cause of action accrued to them under the Act. The Fifth Circuit, as does this court today, refused to enter the "thicket of subtleties and hypocrisies of charges in an effort to ascertain whether or not the charges were bona fide or merely a cloak for dismissial [sic] for other reasons," Wambles v. IBT at 890.

The Sewell and Wambles cases together illuminate the path here taken. Contrary to plaintiff's argument, they are not narrowed by Miller v. Holden, 535 F.2d 912 (5th Cir. 1976). The unique factual setting of Miller was deemed by the Fifth Circuit

to be crucial. Plaintiff *Miller* was a member of the defendant union (Plumbers and Pipe Fitters), and *also* an employee of that union's Education Trust, a legally separate entity from the union. After plaintiff had supported an "opposition" candidate for business manager of his local, the winning candidate, along with certain trustees of the Education Trust, pressured the Board of Trustees to discharge plaintiff from its employ.

First, the court held that such action was not "discipline" within the meaning of § 609, inasmuch as that term must be construed in light of the ejusdem generis doctrine. The specific types of discipline mentioned in that provision (expulsion or suspension from union membership, or the imposition of fines) narrowed the definition of "otherwise discipline" to exclude the action brought to bear against that plaintiff. The court did hold that it had jurisdiction to consider whether plaintiff's Title I "Bill of Rights" guarantees had been invaded, after interpreting Section 102 of the Act to provide a separate and distinct basis of subject matter jurisdiction from § 609. The court read § 609 as the basis of complaints regarding *any* portion of the Act, and not just Title I violations, whereas § 102 was the specific remedy section of Title I.

Nevertheless, the court in *Miller*, specifically affirmed its earlier holding that Title I, substantively, protects the union–member, and not the union–employee (or in this case, union–appointee) relationship. Although the court cautioned against an overbroad reading of the *Sewell* or *Wambles* decisions, it *did not express any view* on the merits of plaintiff's complaint. If, in the instant case, plaintiff had been an official of one of the trust funds set up for the benefit of UAW members, and been dismissed from that position, then this court would be justified in taking a closer look at the facts, as the *Miller* court instructed the District Court of Louisiana to do.

Plaintiff has cited the opinions of several other circuits in support of the argument that he must be protected in his appointed position by the LMRDA. All but one of those decisions, however, held that the summary removal of an *elected* union official, in reprisal for that official's outspoken dissidence, violated the LMRDA. *Newman v. Local 1101, Communication Workers of America*, 570 F.2d 439 (2d Cir. 1978), and its progeny "Newman II" and "Newman III", *Bradford v. Textile Workers of America*, 563 F.2d 1138 (4th Cir. 1977), *Wood v. Dennis*, 489 F.2d 849 (7th Cir. 1973), cert. denied 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974), *Gabauer v. Woodcock*, 520 F.2d 1084 (8th Cir. 1975), cert. denied 423 U.S. 1061, 96 S.Ct. 800, 46 L.Ed.2d 653 (1976) and *Cooke v. Orange Belt District Council of Painters*, 529 F.2d 815 (9th Cir. 1976), are the leading decisions holding that the removal of elected union officers violates the LMRDA. Certainly, such a removal of a duly elected union officer undermines the democratic authority of those who have placed him or her into office, and may well constitute an undemocratic reversal of the will of the membership which the LMRDA is intended to prevent.

But as even one of the decisions cited by plaintiff has noted, the distinction between elected and appointed union officers is a critical one. In fact, in one of the decisions relied upon by plaintiff here, the Fourth Circuit articulated this distinction between the *Wambles* Fifth Circuit line of cases and its own decision in *Bradford v. Textile Workers*, 563 F.2d 1138, 1141 fn. 6.

This court notes that the decision of the Ninth Circuit in *Grand Lodge of the International Association of Machinists v. King*, 335 F.2d 340 (1964), cert. denied 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334 (1964), supports plaintiff's argument. *King* holds that an appointed union officer could not be dismissed for exercising his Title I free speech rights, *except* under a neutrally–applied union program to enforce reasonable limitations on the intra–union political activities of union office holders. This court does not follow the Ninth Circuit's interpretation of the appropriate method of enforcing the goal of the LMRDA, (which is the attainment of union democracy) and rejects the *King* holding in favor of the analysis of the Third and Fifth Circuits.

The basis of the *King* decision has not escaped criticism elsewhere. In *Wood v. Dennis, supra* a divided Seventh Circuit, sitting en banc, found that the Act prohibited removal of an elected union official in retaliation for his exercise of free speech rights. First, the majority notes that their decision might have been different if the plaintiff had not been an elected official (*Wood v. Dennis* at 856) and if the plaintiff had committed an act of insubordination, rather than merely having expressed his views on the rights of union members under a Merger Agreement, and his intention to run for union office.

In his concurrence, Judge (now Justice) Stevens agreed with the majority result, but noted his disagreement with that portion of *King* which held that the definition of "otherwise discipline" in § 609 is broader than the definition of those same words in § 101(a)(5) (the "due process" provision, discussed below, with regard to Count II of plaintiff's complaint). Judge Stevens pointed out that this peculiar interpretation had not been followed by any other circuit courts, *Wood v. Dennis* at 857, fn. 1. Judge Stevens expressed his doubts about this very central aspect of the *King* decision and voiced his opinion that:

> Patronage is by no means an essential attribute of democracy . . . but it is difficult to believe that Congress intended to address the patronage issue when it enacted the Landrum–Griffin Act in 1959. Had it done so, I am inclined to believe that appointed policy-making officials would have been subject to removal by their sponsors. (citing *Sewell.*) *Woods v. Dennis, supra* at 858.

Undeniably, the decisions of the courts in this area are not uniform, in large part because the statutory language of LMRDA leaves room for much interpretation. Neither is the legislative history illuminating on the issue raised by Count I of plaintiff's complaint. It appears that Congress did not debate, in enacting LMRDA, whether § 609 or § 102 applied to the removal of members from union office, nor did it explicitly define the meaning of "otherwise discipline" in § 609.

This court must therefore rely upon its own understanding of Congressional purpose, and attempt here to best serve that purpose. In dismissing Count I, this court bears in mind the crucial fact that Congress clearly intended that the judiciary refrain from undue interference in the internal operations of labor unions. This general framework of non–interference should be altered only to serve other clearly expressed and compelling goals. The Senate Report on LMRDA admonishes the legislators who were working on the bill:

> In providing remedies for existing evils the Senate should be careful neither to undermine self–government . . . nor to weaken unions in their role as the bargaining representatives of employees. S.Rep. No. 187, 86th Cong., 1st Sess. 5 (1959), U.S.Code Cong. & Admin. News 1959, pp. 2318, 2322.

The basic goal of the LMRDA is to promote union democracy—to insure that union officials fulfill their fiduciary duties to the membership without the taint of corruption or bias, to urge and to protect the participation of all members in the affairs of the union, and to guarantee fair elections. Title I of the LMRDA guarantees the rights of members to express their views freely, and Section 609 of that Act prohibits "certain discipline" in retaliation of such expression.

The power to remove appointed officials is consistent with the policy of the law, and the ability of elected officials (or the membership itself) to remove their appointees is a vital component of a democratic system. The resultant chilling impact on the free speech rights of members is so slight as not to pose a sufficient counterweight to the need of elected officers to be empowered to dismiss those of their appointees who fail to implement the mandates of the union electorate.

If and when elected officials behave autocratically or repressively, the membership is empowered to remedy this situation at the time of union elections, and by exercising the rights assured to all members by the

law. The dismissed official himself retains the right to continue to express his views as a member to fellow members, both in formal and informal meetings, and in the secrecy of the union voting booth.

The occasions on which the court should inject itself into intra–union affairs are only those which have the most fundamental impact upon union democracy. These include disciplinary retaliation against vocal members in the form of suspension, expulsion, fine or prohibition from participation in union affairs, and the retaliatory removals of elected union officers, without the consent of the membership. The removal of appointed union officers, however, is simply a necessary part of democratic viability, and cannot create rights of action in the federal courts under the LMRDA.

At times, however, the courts may be asked to enforce contractual arrangements between unions and their employees or appointees. This constitutes another facet of plaintiff's complaint, and such an examination does not necessarily constitute unwarranted meddling in intra–union affairs. A union which sets out terms of employment, of appointment, or of removal, and agrees to abide by those terms, can be treated as any other party to a contract, quite apart from the limited remedies of the LMRDA.

This court finds that, as a matter of law, plaintiff's dismissal is not actionable under the LMRDA, and grants judgment in favor of defendants on Count I of plaintiff's complaint.

### COUNT II–FAILURE TO STATE A CLAIM UNDER § 101(a)(5)

■ The second count of plaintiff's complaint alleges that his summary removal constituted discipline in violation of the "due process" provisions of § 101(a)(5) of the LMRDA [29 U.S.C. § 411(a)(5)]. That section, entitled "Safeguards Against Improper Disciplinary Action" states:

No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

Unlike the substantive free speech protections of § 101(a)(2) (as enforceable through § 102 and § 609), the courts are unanimous in their conclusion that no cause of action is available to a union officer under this section.

All of the circuits when faced with a claim by a removed union officer have found § 101(a)(5) to be inapplicable. This has been the result in the Second Circuit (*Schonfeld v. Penza*, 477 F.2d 899, 1973), the Fifth Circuit (*Miller v. Holden*, 535 F.2d 912, 1976), the Seventh Circuit (*Air Line Stewards v. Transport Workers Union*, 334 F.2d 805, 1964, *cert. den.* 379 U.S. 972, 85 S.Ct. 648, 13 L.Ed.2d 563, 1965), and even in two of the circuits which have determined that § 101(a)(2) applies to union officials: the Eighth Circuit (*Gabauer v. Woodcock*, 520 F.2d 1084, 1976, *cert. den.* 423 U.S. 1061, 96 S.Ct. 800, 46 L.Ed.2d 653, 1976) and the Ninth Circuit (*Grand Lodge v. King*, 335 F.2d 340, 1964).

Similarly, Congressional intention has been clearly expressed, and leaves no room for argument on this issue:

In this Section there is matter that must be explained. In paragraph 5, relating to safeguards against improper disciplinary action, it should be noted that the prohibition on suspension without observing certain safeguards applies only to suspension of membership in the union; it does not refer to suspension of a member's status as an officer in the union. (Conference Report, H.R. No. 1147, 31, 86th Cong., 1st Sess. U.S.Code Cong. & Admin. News 1959, p. 2504.)

Section 101(a)(5) is designed to provide procedural safeguards to union members whose very livelihood may be threatened if their union membership is taken away. No such harm could befall plaintiff here, who continued to be employed by GM, and continued as a member of his union, with all of the rights and responsibilities of other members.

Plaintiff alludes to various procedural rights guaranteed to union members through the union's constitution. Whatever these may be, they are not incorporated directly into the legislative scheme, nor can they expand the coverage of § 101(a)(5) beyond that which the legislators intended.

Although plaintiff argues that the legislative history allows other interpretations, this court finds that § 101(a)(5) affords no procedural protection to appointed union officers removed from their positions. Count II of the complaint must, therefore, be dismissed.

## COUNT IV–LACK OF SUBJECT MATTER JURISDICTION

■ Plaintiff asserts that his summary removal was in violation of the procedural rights guaranteed to him in Article 31 of the Union's Constitution, and based Count III of his complaint upon this alleged violation. Jurisdiction is founded upon § 301 of the Labor Management Relations Act which states, in relevant part:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Defendants ask that this court dismiss Count IV. They argue that, in these circumstances, the union's Constitution is not a "contract," within the meaning of § 301 of the LMRA, and therefore is not enforceable in federal court.

The court agrees with defendants' contention that the breach of contract here alleged does not confer jurisdiction upon this court under § 301 of the LMRA. The language of that section has been interpreted to encompass claims of breach of union constitutions (as well as charters), but that expansion of the statute's literal terms has not been so broad as to include plaintiff's claim here.

Virtually all of the decisions cited by plaintiff in support of its argument involve disputes between two locals of the same union, two locals of different unions, or a local union and its parent (district or national) body. The decisions turn upon the finding that the alleged breach of a union constitution, if unremedied, will negatively impact upon labor–management relations.

Our own Sixth Circuit has addressed this issue only once, and has adopted this viewpoint. The Court, in *Trail v. IBT*, 542 F.2d 961 (6th Cir. 1976), held that where local union members sued their International, alleging breach of the organization's constitution by virtue of the International's refusal to allow a membership ratification vote on a rider to the national agreement, no § 301 jurisdiction was conferred upon the court. The Circuit's opinion, written by Judge Edwards, affirmed the decision of then District Judge Kennedy, who had made a careful examination of the holdings of the Second, Fourth, Ninth and Tenth Circuits on this same issue. Judge Kennedy had found that no § 301 jurisdiction existed of a breach–of–union–constitution claim between a labor organization and its members, because the LMRA was not designed to police the internal union *compact.* Judge Kennedy had specifically rejected the holding of the Second Circuit in *Abrams v. Carrier Corp.*, 434 F.2d 1234 (1970), and concluded that its reliance on *Smith v. Evening News Assoc.*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) was misplaced. It was held that the *Smith* decision must be limited to the recognition of the federal cause of action by an individual union member, based upon a collective bargaining agreement, but not when based upon a union constitution.

The plaintiff points out that the Sixth Circuit did recognize that the alleged breach of a union constitution *might* be the basis of § 301 jurisdiction; but this court understands Judge Edwards' opinion to limit such actions to those putative breaches which have direct impact upon industrial peace and labor–management relations. Judge Edwards wrote that the affirmance of the District Court opinion was reasoned:

. . . primarily [on] the reluctance of Congress and the court to authorize judicial intervention in the internal affairs of unions, and secondarily, that Congress and the courts have provided other specific and complete remedies for plaintiff's cause of action in this case. 542 F.2d 961, 968.

The plaintiff draws our attention to the latter portion of this phrase, and would have this court read *Trail* as being based solely on the holding that the § 301 breach of contract action was duplicitous of the duty of fair representation action which plaintiff had also brought.

Even if the court were to read *Trail* in this manner, dismissal of Count IV is appropriate. Whichever gloss is put upon the *Trail* opinion, plaintiff has no cause of action under § 301 for breach of the union constitution.

This conclusion is consistent with the holdings of other circuits, and of other district courts on this issue. No circuit court to date has held that an individual union member has a § 301 cause of action for breach of the union constitution when his complaint involved purely intra–union matters. In fact, this court has found no circuit decision in which the disputants were other than two unions, suing one another over matters of jurisdictional disputes (*Santos v. District Council of New York*, 547 F.2d 197, 2d Cir. 1977); or a local union and its parent body suing one another over constitutional guarantees as to affiliation procedures (*Local Union No. 657 v. Sidell*, 552 F.2d 1250, 7th Cir. 1977); or as to voting procedures (*Trail v. IBT, supra* and *Local 1380 Brotherhood of Railway Clerks v. Dennis*, 625 F.2d 819, 9th Cir. 1980).

Neither have the district courts veered from the established doctrine of limiting § 301 breach–of–union–constitution claims to those posing threats to industrial peace, such as disputes over the effectiveness of collective bargaining agreements and exclusive representation (*Keck v. Employees Independent Association*, 387 F.Supp. 241, E.D.Pa.1974); or as to which officers are to govern a union, (*Printing Specialties District Council v. International Printing Union*, 466 F.Supp. 13, E.D.Tenn., 1978); or jurisdictional disputes. (*Truck Driver Union v. IBT*, 482 F.Supp. 266, Mass.1979).

The only case cited by plaintiff which presents a claim by an individual union member against his local, was based upon numerous statutes (including LMRDA § 101(a)(1), § 101(a)(2), LMRDA § 401 and § 501, 42 U.S.C. § 1981 and § 301 of the LMRA), and held that plaintiff had stated a § 301 action for the union–defendant's breach of the duty of fair representation as well as a *state* cause of action for breach of contract. (*Murphy v. Operating Engineers, Local 18*, 99 LRRM 2074, N.D.Ohio, 1978). Plaintiff herein may well have the same alternatives available to him, but does not have a federal cause of action for breach of the union's constitution.

Plaintiff has not presented any issue of fact implicating adverse labor–management repercussions resultant from this alleged breach. This failure compels the court to find that there is no implication here of industrial or economic unrest, no bearing upon the collective bargaining relationship, no traumatic industrial or economic repercussion; in sum no "nexus" with federal labor policy such as to warrant federal jurisdiction. None of the formulations of the standard for finding federal jurisdiction, which are defined by the various courts that have spoken to this issue, are found here. Thus, Count IV of plaintiff's complaint must be dismissed.

## CONCLUSION

This court finds that Count I of plaintiff's complaint must be dismissed for failure to state a cause of action, in that the dismissal of an appointed union officer does not violate § 101(a)(2) of the LMRDA. Count II of plaintiff's complaint must be dismissed for failure to state a cause of action as the dismissal of union officers does not invoke the protections of § 101(a)(5) of the LMRDA. Count IV of plaintiff's complaint must also be dismissed since his claim is without the subject matter

jurisdiction of this court under § 301 of the LMRA.

IT IS SO ORDERED.