**Paul W. MILLER, Jr.,**
**Plaintiff-Appellant,**

v.

**Henry B. HOLDEN, Pearson Holden, Houston Northrop, William Elgin, Spencer Cosper, the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Local No. 198 Educational Trust, and United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry Local Union No. 198, Defendants-Appellees.**

No. 75–1050.

United States Court of Appeals,
Fifth Circuit.

July 23, 1976.

John R. Keogh, Joseph F. Keogh, Baton Rouge, La., for plaintiff-appellant.

James D. Thomas, II, Baton Rouge, La., C. Paul Barker, New Orleans, La., for defendants-appellees.

Before DYER, RONEY and GEE, Circuit Judges.

GEE, Circuit Judge:

Plaintiff's complaint seeks legal and equitable relief against the impending (since consummated) termination of plaintiff from his employment as Training Coordinator for the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Local No. 198 Education Trust (hereinafter "the Trust"). This termination was allegedly in retaliation for plaintiff's support of an unsuccessful candidate for the office of Business Manager of the local union, an office won by defendant Pearson Holden. The named defendants are the Trust, the local union, four union members (three of whom serve as trustees by virtue of their election by the local union membership), and one management-appointed trustee who allegedly succumbed to pressure to vote in favor of discharging the plaintiff. The complaint asserts that the union's improper use of influence against the Trust and the trustees' reaction to that influence represented a violation of 29 U.S.C. §§ 158(a)(1), 158(a)(3), 158(b)(1)(A), and 158(b)(2) (1970) (the National Labor Relations Act claims). The same conduct is characterized as violative of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 411(a)(1), 411(a)(2), and 411(a)(5) (1970) (the Title I, LMRDA, or Landrum-Griffin Act claims). The district court held a hearing on plaintiff's request for a preliminary injunction. After considering argument and testimony of Pearson Holden further clarifying the relationship between the Trust and the local union, the district court dismissed the complaint for lack of jurisdiction.[1] During argument

---

1. The defendants assert that this consideration of material beyond the face of the pleadings converted the district court's decision into a grant of summary judgment. Since it appears

before us, plaintiff abandoned his claims against the individual defendants, and we do not consider them. We agree that there is no jurisdiction to hear the claims against plaintiff's employer, the Trust, but we reverse with respect to two claims against the local union.

■ At argument, plaintiff properly conceded that the district court lacked jurisdiction to hear any claim arising under the National Labor Relations Act; such claims must be pursued through the National Labor Relations Board. Plaintiff also conceded that the LMRDA does not create a cause of action against an employer or confer federal jurisdiction to hear such a claim.[2] However, he contends that the dismissal was premature here because further development of the facts would demonstrate that the Trust is totally controlled and dominated by the local union. The facts before the district court indicate that the Trust is an independent entity, financed by the members of a contractors' association and created for the training of apprentices. It is managed by ten trustees—five selected by the contractors' association and five elected by the local union membership. Because there is nothing in the complaint or the

evidence before the district court which casts doubt on the independence of the Trust, we affirm the dismissal of the LMRDA claims against the Trust and pretermit consideration of the abstract issue of whether an employer who is merely an alter-ego of a union can be sued under the LMRDA. Even if individual management trustees bowed to union pressure, the Trust has a substantial and separate existence from the union.

■ Turning to the issue of jurisdiction over the union, the parties have articulated the question for decision in terms of whether the complaint alleges union action within the "otherwise disciplined" phrase in 29 U.S.C. § 411(a)(5)[3] or 29 U.S.C. § 529.[4] We agree with appellees that the complaint does not allege any activity within the scope of these prohibitions. "Discipline" is not defined by the LMRDA and, as the commentators have uniformly acknowledged, the legislative history of the Act is unenlightening.[5] These circumstances make application of the maxim of *ejusdem generis* particularly appropriate. We therefore construe the general term "discipline" to conform to the essential character of the specifically enumerated types of discipline

that the district court confined itself to the jurisdiction issue, its consideration of extrinsic evidence did not affect the character of its disposition of the motion to dismiss. *See* 5 Wright & Miller, Federal Practice & Procedure: Civil § 1366 (1969 ed.).

2. *See, e. g., Hayes v. Consolidated Serv. Corp.,* 517 F.2d 564 (1st Cir.1975); *Duncan v. Peninsula Shipbuilders Ass'n,* 394 F.2d 237 (4th Cir. 1968); *Thompson v. New York Central R.R.,* 361 F.2d 137, 145 (2d Cir.1966).

3. 29 U.S.C. § 411(a)(5) states:
No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

4. *Id.* § 529 provides:
It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend,

expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter. The provisions of section 412 of this title shall be applicable to the enforcement of this section.

5. The final text of the LMRDA did not receive committee consideration in either house of Congress. Title I, including § 411(a)(5), was added on the Senate floor and then modified on the floor by an impromptu compromise. The statute which passed the House of Representatives was likewise a floor amendment closely modeled on the version finally passed by the Senate, but one of its differences was the change in § 529 from a criminal to a civil prohibition. *See* Atleson, *A Union Member's Right of Free Speech and Assembly: Institutional Interests and Individual Rights,* 51 Minn. L.Rev. 403, 406–09 (1967); Cox, *Internal Affairs of Labor Unions Under the Labor Reform Act of 1959,* 58 Mich.L.Rev. 819, 831–33 (1960). *See generally* 1 Legislative History of the LMRDA of 1959, 338, 516, 619, 687, 858 (NLRB ed. 1959) [hereinafter cited as Leg. Hist.].

—fine, expulsion, and suspension. This process causes us to focus on the motivation of the union conduct and the manner in which the penalty is enforced. Union action which adversely affects a member is "discipline" only when (1) it is undertaken under color of the union's right to control the member's conduct in order to protect the interests of the union or its membership, and (2) it directly penalizes him in a way which separates him from comparable members in good standing.[6]

■ This construction of the statute is implicit in *Seeley v. Brotherhood of Painters,* 308 F.2d 52 (5th Cir.1962), where we affirmed the dismissal of § 411(a)(5) and § 529 claims. We stated that the punishment suffered by a union member "must have some relation to the plaintiff's membership in the labor organization" in order to constitute "discipline" under either section. *Id.* at 59–60. Our opinion today merely clarifies the requisite relation. In particular, it demonstrates that a discharge from employment represents discipline only when the member's employment status is a function of some internal union status, such as a hiring hall or, conversely, a union blacklist.

Evaluated with this understanding of the statute, the complaint obviously fails to state a claim under § 411(a)(5) or § 529.[7] There is no allegation that plaintiff's union

membership has been impaired or that his employment is in any way connected to any status within the union.[8]

Some circuits, recognizing the distinct purposes behind the substantive protections of § 529 and the procedural protections of § 411(a)(5), have held that the former section employs a broader concept of "discipline" than does the latter section. *E. g., Grand Lodge of Int. Ass'n of Machinists v. King,* 335 F.2d 340 (9th Cir.), *cert. denied,* 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334 (1964). Our conclusion that this complaint fails to allege "discipline" within the scope of either statute renders it unnecessary to consider the possibility that § 411(a)(5) employs the phrase in a more restrictive sense. *But see Wood v. Dennis,* 489 F.2d 849, 857– 58 (7th Cir.1973) (en banc) (Stevens, J., concurring), *cert. denied,* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974).

■ However, our conclusion on the issue framed by the parties does not exhaust our inquiry. The district court had jurisdiction under 29 U.S.C. § 412 to hear the claims arising under 29 U.S.C. §§ 411(a)(1) and (a)(2). Section 412 is the basic enforcement provision of the labor union member's "bill of rights" in Title I of the LMRDA; it provides a private remedy for violations of Title I and concomitant federal jurisdiction.[9] We do not believe that § 412

**6.** *Compare* Etelson and Smith, *Union Discipline under the Landrum-Griffin Act,* 82 Harv.L.Rev. 727, 734 (1969), *with* Comment, *Applicability of LMRDA Section 101(a)(5) to Union Interference with Employment Opportunities,* 114 U.Pa.L.Rev. 700 (1966).

**7.** We thus articulate the issue as one of statutory interpretation rather than jurisdiction. *See Lewis v. American Fed'n of State, County and Municipal Employees,* 407 F.2d 1185, 1188 n. 3 (3d Cir.), *cert. denied,* 396 U.S. 866, 90 S.Ct. 145, 24 L.Ed.2d 120 (1969). However, we look only to the complaint and do not enter the procedural morass of whether summary judgment may have been appropriate in light of the additional facts developed by Pearson Holden's testimony.

**8.** Although we reiterate that we base our decision only on the complaint, we are confident that this is not an overly technical disposition because the parties agree that the plaintiff re-

mained a member in good standing after his discharge and that union membership was so unrelated to the position of Training Coordinator for the Trust that it was not a prerequisite for the job.

**9.** 29 U.S.C. § 412 states:
> Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

In the legislative development of the LMRDA, the model for this provision first appeared in the Senate in combination with the "bill of rights." There was no comparable section in

jurisdiction is limited to cases in which the union member is disciplined or punished in his capacity as a member. By its terms, this section provides jurisdiction to redress any union action which infringes the rights protected by Title I. Because plaintiff's claims involving the equal rights of union membership and free speech assert that rights secured by Title I have been "infringed" by the union,[10] a federal court has jurisdiction. The distinction between union activity which infringes Title I rights and that which constitutes "discipline" for the exercise of such rights does not render § 529 superfluous. While § 412 is independently adequate to enforce Title I rights, § 529 remains available as a remedy for "discipline" in retaliation for the exercise of rights protected by other parts of the LMRDA. See Atleson, supra n. 5, at 483 n. 245; Etelson and Smith, supra n. 6, at 729 n. 9.

This result is compatible with Seeley, supra, which did not address the distinction between the scope of § 412 and that of § 529. Nor does it conflict with this circuit's previous remarks that the substantive protection of Title I deals only with "union-member" cases rather than "union-employee" and "union-officer" ones. See Sewell v. Grand Lodge of Int. Ass'n of Machinists, 445 F.2d 545, 550–51 n. 21 (5th Cir.1971), cert. denied, 404 U.S. 1024, 92 S.Ct. 674, 30 L.Ed.2d 674 (1972); Fulton Lodge No. 2 of Int. Ass'n of Machinists v. Nix, 415 F.2d 212, 217 (5th Cir.1969), cert. denied, 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972); Nelms v. United Ass'n of Journeymen and Apprentices of Plumbing, 405 F.2d 715, 717 (5th Cir.1968). With the exception of Sewell, neither these cases nor the cases from other courts which they have cited for this proposition involved a substantive claim of infringement of equal rights or free speech.

In fact, they fall into two categories: (1) claims for procedural protection, where the very definition of the right in § 411(a)(5) is limited to situations in which "discipline" occurs; and (2) claims in which the employment discharge or officer removal is not alleged to be in retaliation for the exercise of specifically protected statutory rights. The result in Sewell rests on a union's right to deal with insubordination rather than on statutory interpretation. See 445 F.2d at 550–52. Sewell or Wambles v. Int. Brotherhood of Teamsters, 488 F.2d 888 (5th Cir. 1974), which rejected any requirement of "cause" for discharge from appointed union office, may eventually be controlling by analogy, but the current state of the record simply does not permit further exploration of these issues. See Wood v. Dennis, supra, 489 F.2d at 856 (majority opinion). However, we caution against an overly broad reading of those cases which, in explicit terms, are confined to their facts.

Our conclusion that two of plaintiff's claims must be entertained by the district court intimates no view either on the merits of the claims or on the possibility that pretrial disposition by summary judgment may be appropriate at a later time. We likewise intimate no view on the question of whether plaintiff has adequately exhausted his union administrative remedies.

█ The decision that the district court had jurisdiction because the complaint asserts violations of rights guaranteed under the LMRDA also means that the case is not subject to preemption by the National Labor Relations Board. E. g., Fulton Lodge No. 2 of Int. Ass'n of Machinists v. Nix, supra, 415 F.2d at 215–16.

Although we thus disagree with the other circuits which have drawn variant forms of union retaliation within the rubric of § 529, we agree with the jurisdictional result in

the original Senate bill, which did not specify any individual membership rights. Compare 1 Leg. Hist. 338 with 1 Leg. Hist. 516, 521.

10. The union's alleged role in procuring plaintiff's discharge is found in the allegation that a union officer acting in his official capacity contributed to the discharge decision. The additional facts developed in the district court like-

wise demonstrate contributing conduct by elected union officials acting within the scope of their elected positions. The complaint is not one which predicates the union's responsibility on the private misconduct of individuals who happen to be union representatives. See Tomko v. Hilbert, 288 F.2d 625 (3d Cir.1961).

those cases because the essence of such claims is interference with the statutorily-guaranteed privileges of union membership; the method of interference chosen does not divest the court of jurisdiction under § 412. *See Sipe v. Local 191, Carpenters,* 393 F.Supp. 865, 868–69 n. 3 (M.D. Pa. 1975). Indeed, if *Sewell*'s recognition that a member retains his statutory rights despite his dual capacity as a member and a union official or employee [11] is to have meaning, § 412 must provide a remedy for retaliation against a member's exercise of free speech even if he is not punished in his capacity as a member. The position we take guarantees the availability of a federal forum to redress violations of the national policy of labor union democracy without excessive judicial interference in the internal affairs of the labor movement.

AFFIRMED in part; REVERSED in part.