Clyde Hurlbert, Biloxi, Miss., for defendants-appellants.

Acevedo & Tisdale, Robert M. Acevedo, Biloxi, Miss., for plaintiffs-appellees.

Before TATE, GARWOOD and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

After consent by all parties, this diversity case was referred to a magistrate for trial and the entry of final judgment. 28 U.S.C. § 636(c). Appellants, relying on *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix,* 712 F.2d 1305 (9th Cir.1983), claim that magistrates in trying such cases exercise powers reserved under the Constitution to Article III judges.

*Pacemaker,* however, was vacated *en banc,* 725 F.2d 537 (9th Cir.1984) (en banc). That court found § 636(c) of the Magistrates Act saved from any constitutional infirmity by its requirement that all parties consent to such transfer and by the power of the district court to vacate the reference to the magistrate on its own motion. § 636(c)(1), (6). Each circuit facing this question has reached a similar conclusion. *Goldstein v. Kelleher,* 728 F.2d 32 (1st Cir.1984); *Collins v. Foreman,* 729 F.2d 108 (2d Cir.1984); *Wharton-Thomas v. United States,* 721 F.2d 922 (3d Cir.1983).

For essentially the reasons stated by our sister circuits, we find that § 636(c) of the Magistrates Act does not suffer the asserted constitutional infirmity. We publish only part II of this opinion because this breach of contract case otherwise presents no issues of precedential value.

AFFIRMED.

Stu ADAMS–LUNDY, Elaine Barber, Sherri Capello, Lenny Aurigemma, Anne Moroh, Patty Bias, Suzanne Nash, Pedro Rivera, Gail Gatzert, Brian Hagerty, Becky Kroll, Karen Fuller, Patt A. Gibbs, Patty Roberts Smith, Lynda R. Oswald, Carolyn M. Montgomery, and Tamara Utens, Plaintiffs-Appellees,

v.

The ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, Bruno Paluk, Cheryl Cornett, Michael Kelliher, Linda Fincher, Debbe Eiss, Arlene Le Winter, Debbie Anderson, Randy Edwards, Kathy Knopp, Phyllis Conrad, and Judy Ladislaw, Defendants-Appellants.

No. 84–1257.

United States Court of Appeals, Fifth Circuit.

April 30, 1984.

Rehearing and Rehearing En Banc Denied June 14, 1984.

Hal K. Gillespie, Dallas, Tex., for Assn. of Professional Flight Attendants.

Eric D. Ryan, Dallas, Tex., for Bruno Paluk, et al.

Joann Peters, Dallas, Tex., Carin Ann Clauss, Madison, Wis., for plaintiffs-appellees.

Before JOHNSON, HIGGINBOTHAM and DAVIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

We review the granting of a preliminary injunction to eleven members of a union governing board who challenge their removal from office at the hands of the remaining board members. Because we conclude that plaintiffs have not established a likelihood of success on the merits of their claim under the Labor-Management Reporting and Disclosure Act, we vacate the preliminary injunction granted by the district court.

This controversy was precipitated by a struggle between two factions for control of the Association of Professional Flight Attendants, a labor union representing the flight attendants employed by American Airlines. For several years, the balance of power has shifted back and forth between these two factions, until the union's most recent election left one faction in control of eleven seats on the union's governing board and the other faction in control of nine seats including the presidency.

At a board meeting held March 3, 1984, the minority faction proposed several resolutions deemed a "litmus test" of loyalty to their union over a rival union some had assertedly supported. The members of the majority faction either voted against or abstained on these resolutions, and most were defeated. A member of the minority faction then filed charges against all board members failing to support certain of these resolutions, accusing them of disloyalty to the union. A motion was made to suspend the accused members from office during the pendency of these charges. When a roll call vote was taken on this resolution, those who stood thus accused of disloyalty were deemed to have a personal interest in the outcome of the vote and accordingly were not permitted to vote as board members. The motion carried, and nine mem-

bers of the board thereby suspended eleven of their brethren.

Bypassing intra-union dispute resolution processes, the eleven promptly filed suit in U.S. District Court, seeking a temporary restraining order and preliminary injunction to prevent the nine from exercising their putative control over the union's affairs. Plaintiffs charged that their suspension from union office violated the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.*, but the specific exchange of charges and defenses need not be detailed here. The district court granted a preliminary injunction, finding that plaintiffs had established a likelihood that they would prevail on the merits, and that the balance of harms, the irreparability of harm, and the public interest likewise supported the granting of the requested relief. Defendants appeal on several grounds, only one of which we need reach.

I

■ The primary objective of the LMRDA is that of "ensuring that unions would be democratically governed and responsive to the will of their memberships." *Finnegan v. Leu,* 456 U.S. 431, 102 S.Ct. 1867, 1870, 72 L.Ed.2d 239 (1982). Rank and file union members are granted rights under the Act to protect them from abuses of power by the union leadership. Union leaders, *per se,* are not themselves a protected class under this Act, except that they, too, may not be deprived of the basic rights attending on union membership. *Id.* 102 S.Ct. at 1871. We emphasize, therefore, that the plaintiffs here have not been denied any basic membership rights; they are still members in good standing, possessed of the right to vote, to speak out, and to run for union office.

II

Under sections 101(a)(1) and (a)(2) of the LMRDA, 29 U.S.C. §§ 411(a)(1) & (a)(2), members of labor organizations have the right to vote in union elections and to express independent opinions on matters of concern to the union. Section 101(a)(5) of

the Act provides in turn that no member may be "fined, suspended, expelled, or otherwise disciplined" without certain procedural protections. Section 609 of the Act, 29 U.S.C. § 529, likewise forbids a labor organization, its officers, or agents to "fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under [the Act]." For some years, courts debated whether removal from union office was a form of "discipline" proscribed by the Act. Courts evidently agreed that removal from office was not comprehended by § 101(a)(5), but, though § 609 employs essentially identical language, some courts concluded from context that the latter section was broader in scope and could comprehend removal from union office. *See Grand Lodge of the Int'l Assn. of Machinists v. King*, 335 F.2d 340, 344 (9th Cir.), *cert. denied*, 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334 (1964). This view was rejected by the Supreme Court in *Finnegan v. Leu*, 102 S.Ct. at 1872 n. 9.

In *Finnegan*, the Court held that the LMRDA provided no relief for a union business agent who had been fired from his appointed position by a newly-elected union president whose candidacy the business agent had opposed. *See also Wambles v. Int'l Bhd. of Teamsters, etc.*, 488 F.2d 888 (5th Cir.1974). The Supreme Court determined that the Act's consistent references to the rights of "members" of labor organizations indicated that § 101(a)(5) and § 609 protect only the rights of membership *per se*, and that a union officer who is removed from office but not deprived of membership in the union has suffered no loss cognizable as "discipline" proscribed by these sections of the Act. Plaintiffs here concede that they have no claims arising under §§ 101(a)(5) and 609.

### III

There is, however, another statutory section under which LMRDA claims may be brought, and this is the section relied upon by these plaintiffs. Section 102 of the Act, 29 U.S.C. § 412, provides a right of action to "[a]ny person whose rights secured by the provisions of this title have been infringed by any violation of this title." Plaintiffs contend that an individual may have his § 101 rights of equal voting rights and freedom of speech "infringed" even if he has suffered no "discipline" cognizable under other sections of the Act. More specifically, plaintiffs charge that their removal from union office does constitute such an infringement.

The Supreme Court acknowledged in *Finnegan* that a litigant might be able to maintain an action under § 102 without stating a violation of § 609. 102 S.Ct. at 1872. The question, therefore, is whether a suspended union officer has suffered the "infringement" of "rights secured" by the Act.

The plaintiffs in *Finnegan* were appointed business agents, described by the Court as the president's "staff" and "agents ... to carry out his policies." 102 S.Ct. at 1873. In light of this situation, the Court saw no need to determine what circumstances, if any, would give rise to a claim under § 102 without violating § 609. "[W]hatever limits Title I placed on a union's authority to utilize dismissal from union office as 'part of a purposeful and deliberate attempt to suppress dissent within the union,'" said the Court, citing *Schonfeld v. Penza*, 477 F.2d 899, 904 (2d Cir.1973), "it does not restrict the freedom of an elected union leader to choose a staff whose views are compatible with his own." 102 S.Ct. at 1873. Thus, on the limited ground that permitting an elected union president to name ideologically compatible persons to appointed policymaking positions furthers rather than confounds the LMRDA's goal of union democracy, the Court held that there had been no violation of the Act. In a footnote, however, the Court left open the question "whether a different result might obtain in a case involving nonpolicymaking and nonconfidential employees." *Id.* n. 11.

Our task today is to fill one of the gaps deliberately left by the Court in *Finnegan*. We must determine whether the suspen-

sion of an *elected* union officer can give rise to a claim under §§ 101 and 102. On several occasions we have recognized the general proposition that § 101 "does not include actions for reinstatement to union office as distinguished from union membership." *Nelms v. United Assn. of Journeymen & Apprentices of Plumbing,* 405 F.2d 715, 717 (5th Cir.1968); *Fulton Lodge No. 2 of Int'l Assn. of Machinists v. Nix,* 415 F.2d 212, 217 (5th Cir.1969), *cert. denied,* 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972); *Sewell v. Grand Lodge of Int'l Assn. of Machinists,* 445 F.2d 545, 550–51 n. 21 (5th Cir.1971), *cert. denied,* 404 U.S. 1024, 92 S.Ct. 674, 30 L.Ed.2d 674 (1972). These decisions, however, have been limited somewhat by our opinion in *Miller v. Holden,* 535 F.2d 912 (5th Cir.1976), where we declared that § 102 "must provide a remedy for retaliation against a member's exercise of free speech *even if he is not punished in his capacity as a member."* *Id.* at 917 (emphasis added).

In *Miller,* we held that a plaintiff who alleged that he had been deprived of employment as a union officer in retaliation for supporting an unsuccessful candidate for union office had succeeded in stating a claim under § 102. We reversed the district court's dismissal of the action, but, significantly, expressed no view as to plaintiff's likelihood of success on the merits or the possibility that plaintiff might eventually suffer entry of an adverse summary judgment. *Id.* at 916. Moreover, *Miller* does not purport to amend the holding of *Wambles v. Int'l Bhd. of Teamsters, etc.,* 488 F.2d 888 (5th Cir.1974), where we rejected the argument that an appointed union officer could only be fired for cause.

■ As *Wambles* explicitly authorizes patronage hiring and firing in confidential, policymaking union positions, *Miller* should not be read to suggest that any removal from union office stemming from the exercise of § 101 rights will give rise to a claim under § 102. Patronage, after all, is precisely a system of rewards and punishments dependent on an individual's votes and views. Thus, under ordinary circumstances, the shuffling of positions caused by political in-fighting or factionalism within a union implicates no rights safeguarded by the LMRDA.

■ Sometimes, however, one group or faction within a union may become so entrenched and despotic that the democratic character of the union is threatened. When this happens, and when the dominant group strives to stifle dissent and efforts at reform within the union, the rights of union members to belong to an open democratic labor organization are infringed. As these are the core interests protected by the LMRDA, the Act does provide a remedy in such a case, even if the particular repressive action challenged is the removal from office of a political opponent of the dominant clique—an action not ordinarily comprehended by the terms of § 102.

The case best stating this principle is the Second Circuit's opinion in *Schonfeld v. Penza,* 477 F.2d 899 (2d Cir.1973), where an elected union officer successfully challenged his ouster by the clique holding tyrannical control of his union. *Finnegan* cites *Schonfeld* for the proposition that a violation of § 102 may appear when the ousting of a union officer is "part of a purposeful and deliberate attempt to suppress dissent within the union." 102 S.Ct. at 1873. *Schonfeld,* however, holds that in that case the ousted officer is preserving only his rights as an individual member, and his right to bring that action is no greater than that of any individual member of the union who feels intimidated as a result of the retaliatory action taken against the officer. The Second Circuit adopted the view "that Title I of the Act protects the union-member relationship, but not the union-official or the union-employee relationship and that hence removal from union office gives rise to no rights in the removed official *as an official* under the Act." 477 F.2d at 904 (emphasis in original).

Our decision in *Miller* must be read in light of *Schonfeld.* A plaintiff should not have his complaint dismissed under Fed.R. Civ.P. 12(b)(6) if it might support a claim

that his firing was part of a pattern of intimidation and stifled dissent. Additionally, a plaintiff may yet be able to state a cognizable claim if he occupied a nonconfidential, nonpolicymaking position, *see Finnegan*, 102 S.Ct. at 1873 n. 11, an exception not germane to this case. To obtain a preliminary injunction these plaintiffs had to establish a likelihood of success on the merits, and this they could do under *Schonfeld* only by alleging and proving *prima facie* that their suspension was part of a scheme to subvert the union's basic democratic structure or otherwise directly implicated rights of members.

■ Plaintiffs have not seriously attempted to carry this burden. Certainly, they do charge that defendants' conduct was anti-democratic. However, there is no claim or proof that the defendants are attempting to dismantle the union's electoral system, nor that members opposing that faction are in any fashion suppressed or threatened with reprisals. In other words, the injury done to the plaintiffs was done to them in their status as officers, not in their status as individual members. There has been no infringement of the basic rights of membership protected by §§ 101 and 102.

■ Plaintiffs assert, however, that the removal of an elected officer infringes on the membership's right, guaranteed by § 101(a)(1), to elect its chosen representatives, and not to have its electorally-expressed will thwarted by parliamentary machinations. This claim carries particular force in the present case, where a minority faction has ousted a majority faction, and control of the union's governing body is at least temporarily at stake; nevertheless, the claim would not be qualitatively different even if only a single seat was at issue. A similar claim, however, was rejected by the *Schonfeld* court, 477 F.2d at 903, because the challenged action is not the type of direct interference with voting privileges comprehended by the Act. The case for rejecting this claim is even stronger here, where there is no allegation that the defendants pose any threat to the future conduct of free elections for union office.

■ The question ultimately confronting us is whether elected officers are afforded broader protection under § 102 than are appointed officers.[1] We conclude that the fact that the removed officer was elected by the membership will not suffice to create jurisdiction under the LMRDA. Though "the Act's overriding objective was to insure that unions would be democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections," *Finnegan*, 102 S.Ct. at 1873, *Schonfeld* teaches that the integrity of these democratic institutions is not impaired sufficiently to contravene the Act unless there is "a purposeful and deliberate attempt to suppress dissent within the union," 477 F.2d at 904—in which event, the firing of even an appointed official would presumably violate the Act. *See Finnegan v. Leu; Miller v. Holden.* Absent such impairment, we cannot ignore the Court's observation that in passing the Act "it was rank and file union members—not union officers or employees, as such—whom Congress sought to protect." *Finnegan*, 102 S.Ct. at 1871. The LMRDA is a jurisdiction-granting statute, and we must not presume to exercise jurisdiction Congress has not seen fit to grant.

■ Not every dispute—however important it may seem to the participants—merits resolution in a courtroom. *See, e.g., Georgia High School Assn. v. Waddell*, 248 Ga. 542, 285 S.E.2d 7 (1981) (dispute over outcome of high school football game presents no justiciable issue). In the field of labor disputes particularly, Congress has favored extrajudicial resolution of disputes. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers*

---

1. In the one case since *Finnegan* to consider this question directly, *Local 314, Nat'l Post Office Mail Handlers v. Nat'l Post Office Mail Handlers*, 572 F.Supp. 133, 137 (E.D.Mo.1983), the court rejected any distinction between elected officers and appointed officers, though for reasons we find unpersuasive.

*of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Thus, § 101(a)(4) of the LMRDA provides that even where a claim has arisen under the Act a disgruntled union member may be required to exhaust reasonable internal adjudication procedures before instituting legal or administrative proceedings. A union member who fails to state a claim under the Act must resort exclusively to these internal mechanisms, with the ultimate power of decision vested in the voting membership of the union who have the ability to defeat officers abusing or misemploying their powers.

Denial of the requested relief does not leave these plaintiffs without a remedy. The APFA constitution provides that officers accused of impropriety shall be brought before a trial board and a review board, with ultimate appeal being had to a neutral arbitrator. We believe Congress anticipated that labor organizations would make this sort of provision for the resolution of internal disputes and squabbles among officers, deeming these fora more appropriate for this task than the federal courthouse. As the plaintiffs failed to demonstrate a likelihood of success on the merits, we must vacate the preliminary injunction granted by the district court, and remand the case to that court. That plaintiffs failed to state a federal claim upon which relief could be granted is implicit in our reasoning, but that issue is not immediately before us and we leave the future course of their suit to the district court.

VACATED.